CLOVERLAND DAIRY PRODUCTS CO., INC., v. LEACH, JR., ET AL.

(May 11, 1931. Opinion and Decree.)

St. Clair Adams and St. Clair Adams, Jr., of New Orleans, attorneys for plaintiff, appellant.

Spencer, Gidiere, Phelps & Dunbar and Louis B. Claverie, of New Orleans, attorneys for defendant, appellee, Neal Leach, Jr.

WESTERFIELD, J. This case grows out of an accident resulting from the collision of a delivery wagon, drawn by two mules, and belonging to the Cloverland Dairy Products Company, Inc., with a Stutz roadster automobile driven by Neal Leach, Jr. As originally filed, John Maher was joined as co-defendant upon the theory that he was the owner of the automobile driven by Leach. The claim against Maher has since been abandoned, and we are now only concerned with the liability of Neal Leach, Jr.

The accident occurred on South Claiborne avenue, between Leonidas and Monroe streets, at about 1 a. m., December 15, 1928. The plaintiff's wagon, unattended and filled with milk in bottles, was parked on the right side of the roadway; its driver being absent at the moment of the collision for the purpose of making a delivery of milk at a residence within a few feet of the road. The defendant, accompanied by a young lady, whom he afterwards married, was driving along Claiborne avenue in the direction of Leonidas street and away from Carrollton avenue. The wagon, according to some witnesses, was faced in the opposite direction; that is to say, with the mules toward the Stutz, and, according to others, in the other direction, with the rear of the wagon toward the automobile. This question as to the manner in which the plaintiff's wagon faced is considered of great importance by both counsel in the case, and was so regarded by the judge a quo. The theory of plaintiff is that the mules were blinded by the glare of defendant's headlights, and, in their terror, moved slight-ly toward the path of defendant's automobile, which was coming at a very rapid rate, and was recklessly guided because of the intoxication of its driver. On the other hand, the defendant maintains that the rear of the wagon was toward him, and his headlights not within view of the mules, which, for some reason, started directly across his path at a time when it was impossible to avoid the accident, that he was going at a very moderate speed, 20 miles an hour, and that the accident was due to the carelessness of the driver of the milk wagon in leaving the mules unattended, such action being in violation of section 6 of article 8 of Ordinance No. 7490, C. C. S., which reads as follows:

"No horse or mule shall be left unattended in any street or highway unless securely fastened, or unless the wheels of the vehicle to which it is harnessed are securely tied, fastened or chained, and the vehicle is of sufficient weight to prevent its being dragged at a dangerous speed with wheels so secured."

He also cites article 2321 of the Civil Code to the following effect:

"The owner of an animal is answerable for the damage he has caused; but if the animal had been lost, or had strayed more than a day, he may discharge himself from this responsibility, by abandoning him to the person who has sustained the injury; except where the master has turned loose a dangerous or noxious animal, for then he must pay for all the harm done, without being allowed to make the abandonment," and also Damonte v. Patton, 118 La. 530, 43 So. 153, 8 L. R. A. (N. S.) 209, 118 Am. St. Rep. 384, 10 Ann. Cas. 862; Bentz v. Page, 115 La. 560, 39 So. 599; Zambelli v. F. Johnson & Son Co., 115 La. 483, 39 So. 501; Trenchard v. N. O. Ry. & Light Co., 123 La. 36, 48 So. 575.

It is admitted that plaintiff's mules were unattended on the public highway, and we are satisfied that the driver of the milk

wagon was guilty of violating the municipal ordinance referred to. If this fact may be said to be the proximate cause of the accident, of course there can be no recovery.

A consideration of the testimony in the record, however, convinces us that the defendant Leach was driving in a very reckless manner, and that he was under the influence of liquor. The evidence clearly preponderates to this effect. One of the witnesses puts his speed at 90 miles an hour, one at 50, and one, without attempting to estimate the speed, says that the noise of the engine "sounded like an aeroplane." Another, who happened to be an automobile mechanic, and who arrived on the scene immediately after the accident, examined the speedometer, and testified that it had locked at 72 miles per hour. Moreover, the violence with which the automobile struck the wagon is indicative of high speed. One mule was killed outright, and the other so badly injured that it had to be shot immediately. The wagon was badly damaged, and the automobile practically demolished, and this notwithstanding the fact that there were skidmarks on the paved roadway for a distance of 30 feet, showing that the brakes had locked for that distance before striking the wagon. The Stutz car was a high-priced, high-powered automobile, equipped with four-wheel brakes. It had been taken in by a finance company operated by a friend of defendant's, and was being tried out by Leach at the time of the accident with a view of purchase. The unusual hour, 1 a. m., was selected for the tryout. As to the intoxication, it was established by the testimony of at least three disinterested witnesses. In view of all of the circumstances, the testimony of the defendant and of his wife (she was married at the time of the trial) to the effect that Leach had not been drinking and that they had not exceeded the modest speed of 20 miles per hour is unconvincing.

In our opinion, it is of no importance whether the mules were facing the Stutz, or headed in the opposite direction, for the rule of sudden emergency relied on by defendant cannot be invoked under the circumstances of this case, because the emergency was created by the defendant himself by reason of his reckless driving.

In Huddy on Automobiles (8th Edition) sec. 447, we find the law in this respect to be well stated, as follows:

"The driver of a vehicle in a street must exercise reasonable care to avoid getting into a dangerous situation, from which he will be unable to extricate himself without colliding with another vehicle; and if he omits such care, his later vigilance though of the greatest degree, will not avail him when danger arises from his prior negligence. For example, when the driver of an automobile, has proceeded at an excessive speed, the fact that when he discovered a wagon in his path, the greatest diligence and effort were unable to avert a collision, does not excuse him from liability."

See, also, Dill v. Colley, 3 La. App. 305; Southall v. Smith, 151 La. 967, 92 So. 402, 27 A. L. R. 1194; Anderson v. Davis, 151 Minn. 454, 187 N. W. 224; Simonson v. Huff, 124 Wash. 549, 215 P. 49.

The quantum does not appear to be in dispute.

For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that there be judgment in favor of Cloverland Dairy Products Company, Inc., plaintiff, and against the defendant, Neal Leach, Jr., in the sum of $584.83, with interest thereon from judicial demand and all costs.